## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| NERAK SCAIFE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17 C 8946 |
| | ) | |
| NAOMI FAIVRE[1] and SHANE DAVIS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Nerak Scaife, who at the relevant time was incarcerated at the DeKalb County

Jail, filed a *pro se* lawsuit against correctional officers Naomi Faivre and Shane Davis,

alleging they used excessive force against him while extracting him from his cell on May

4, 2017.  Counsel was appointed to represent Scaife.  The Court thanks appointed

counsel, Richard Dvorak of Dvorak Law Offices, LLC, and Rebecca McCorkle, a 7-11

licensed student at the Northern Illinois University Zeke Giorgio Legal Clinic, for their

diligent work on Scaife's behalf.

The defendants have moved for summary judgment.  For the reasons stated

below, the Court grants defendants' motion.

### Facts

Scaife was a pretrial detainee at the DeKalb jail at the time of the incident, and

---

[1] In Scaife's complaint, he spells the defendant's last name Favre, but the parties now agree that Faivre is the correct spelling.

Faivre and Davis were working as correctional officers. Davis told Scaife that he was being transferred to the Kendall County Jail due to overcrowding. (Scaife notes that the top bunk in his cell was empty at the time.) Scaife did not want to move; among other reasons, he had an enemy at the Kendall County Jail and feared for his safety there. The relocation would also made it harder for his family to visit him. Scaife told the officers that he did not want to be transferred, but they told him he had to move. To be clear, there is no evidence that Faivre or Davis had anything to do with the decision to transfer Scaife; rather they were carrying out orders.

Scaife decided to resist transfer. He took off his clothes—ostensibly to show he had no weapons—and he sat down on the floor of his cell and wrapped his arms and legs around the bars of his cell door. Scaife also wrapped his shirt around his head and face, anticipating that the officers might use pepper spray.

A reasonable jury could find that the officers did not make any effort, or any appreciable effort, to verbally convince Scaife to leave his cell. That said, Scaife does not deny that he was resisting transfer or that this was apparent to Davis and Faivre from his actions.

Davis pried at Scaife's fingers to loosen them from the bars and also kicked Scaife's shins and feet. When this was unsuccessful, Davis pulled the shirt off Scaife's face and stepped aside. Faivre then approached. She initially intended to use a taser on Scaife but opted not to do so. Instead, she sprayed pepper spray toward Scaife's face. But Scaife had his head pointed downward to avoid being sprayed in the face, so the spray hit only his forehead. At this point, Scaife says, Faivre deliberately sprayed the pepper spray onto his genitals. Scaife says that this was painful and that he

screamed out. But he still did not release his arms or legs from the cell bars.

Davis then approached again and pried Scaife's fingers from the cell bars and started kicking Scaife's feet or legs again. The officers got the cell door open slightly, but Scaife was then able to thwart them by getting his arm back through the bars. After further use of force, the officers were able to enter the cell. They handcuffed Scaife and removed him from the cell gave him pants to wear, and removed him from the cell. Scaife says he had pain in his hands, arms, and legs as well as a burning sensation on his genitalia and forehead.

The next day, May 5, a nurse examined Scaife and cleared him for transfer to the Kendall County Jail. The nurse's notes do not reflect any residual effects from the pepper spray. Scaife was also assessed by a mental health counselor, who reported that he said he was fine and was not in any crisis. About two weeks later, at the Kendall County Jail, Scaife's hand was x-rayed based on his complaint to a nurse that he had damage to his arms from the cell extraction; the x-ray showed no dislocation or fracture. Notes from examinations by a nurse on May 17 and by a physician on June 28 make no reference to any complaint by Scaife about any injury or harm to his penis. Medical records reflect a complaint of a penile itch in January 2018, but that was eight months after the incident. He was prescribed an anti-fungal cream. Scaife says, however, that he has experienced discoloration and desensitization. He also contends that he has nerve damage in his hand, though there is no medical evidence to support this.

The Court assumes for purposes of discussion that the officers did not try to talk Scaife out of his cell; Davis deliberately kicked and hit Scaife's hands and feet; under Sheriff's department procedure, Faivre was supposed to get approval from her sergeant

3

before using pepper spray, but she did not; Faivre deliberately sprayed pepper spray onto Scaife's genitals despite knowing that this was contrary to department procedure; and that Scaife suffered some injuries, albeit relatively minor ones.

## Discussion

As indicated, the defendants have moved for summary judgment. In considering the motion, the Court views the evidence in the light most favorable to Scaife and draws reasonable inferences in his favor. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Martin v. Marinez*, 934 F.3d 594, 597–98 (7th Cir. 2019). Summary judgment is appropriate when there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Because Scaife was a pretrial detainee at the time of the incident, his excessive force claim arises under the Fourteenth Amendment's Due Process Clause. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Under that provision, assuming force was knowingly used (which it was), the issue is whether the force was objectively unreasonable. *Id.* at 2473. The determination must be made from the perspective of a reasonable officer on the scene knowing what the officer knew at the time, not with hindsight. *Id.* And there must be appropriate deference to practices that in the judgment of jail officials are needed to preserve internal order and discipline and maintain security. *Id.* Factors considered include:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the use of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.*

4

Davis and Faivre contend that no reasonable jury could find their use of force was objectively unreasonable. Alternatively, they argue that they are entitled to qualified immunity.

Scaife made it clear by his words and actions that he had no intention of complying with the officers' commands to come out of his cell; no reasonable jury could find otherwise. He verbally refused to leave; he took off all his clothes; and he positioned himself to physically prevent the officers from moving him. In retrospect one might say that the officers ought to have done more to try to persuade him, but that's Monday-morning quarterbacking; that aside, it is clear and not reasonably disputable that this would have done no good. In short, any reasonable jury would find that the officers had a legitimate need to use force of some sort to accomplish the transfer. As the Seventh Circuit has stated in the context of a prison inmate, that

> orders given, must be obeyed. Inmates cannot be permitted to decide which orders they will obey an when they will obey them . . . . When an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials. Such a refusal and denial of authority places the staff and other inmates in danger.

*Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984). In using force to remove Scaife from his cell, Faivre and Davis were indisputably carrying out a "legitimate governmental objective." *See Kingsley*, 135 S. Ct. at 2474.

The real question is whether a reasonable jury could find that the type or amount of force used was excessive in relation to the legitimate objective that the officers were attempting to carry out. *See id.* at 2473-74. The Court concludes, with regard to Davis, that the answer to this question is no. First, Davis's actions in attempting to pry Scaife's fingers or hands from the cell bars were reasonably related to the legitimate attempt to

5

remove him from the cell, and his kicking and hitting at Scaife's hands and feet was targeted at the parts of his body that Scaife was using to resist and was not unreasonably excessive (Davis did not, for example, break any bones, nor is there any evidence of tears to muscles or connective tissue). Scaife was not a mere passive resister; he was actively resisting the effort to move him out of the cell. Davis did not, for example, attempt to beat Scaife about the head; rather, he focused directly on Scaife's hands and feet, which were interlaced in the cell bars.

Nor is there a basis in the record that would permit a reasonable jury to find that Davis's actions caused injury to Scaife beyond the brief infliction of pain that was a necessary effect of the attempt to pry Scaife loose from the cell bars. Scaife claims nerve damage, but there is no evidence of this, and he does not claim any bruises or lacerations.

For these reasons, the Court concludes that no reasonable jury could find that Davis's use of force was objectively unreasonable.

With respect to Faivre, Scaife's claim focuses on her use of pepper spray, in particular her allegedly deliberate spraying of pepper spray onto his genitals. The Court will go directly to the question of qualified immunity. Qualified immunity shields from liability governmental officials performing discretionary functions if their conduct does not violate a clearly established right that would be known by a reasonable person. *See, e.g., Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a defense of qualified immunity is raised, the plaintiff bears the burden of overcoming it. *See, e.g., Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019).

To meet his burden, Scaife must show "either a reasonably analogous case that

has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand or that the violation was so obvious that a reasonable person necessarily would have recognized it as a violation of the law." *Id.* (internal quotation marks omitted). This does not require Scaife to find an identical case, but he must show "some settled authority that would have shown a reasonable officer in [defendant's] position that her alleged actions violated the Constitution." *Id.* (citing *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).

Scaife cites no case suggesting that spraying pepper spray onto a resisting male prisoner's or suspect's genitalia amounts to a violation of constitutional right. Nor is this the sort of thing that would qualify as so obvious that no legal precedent is needed to clearly establish the unlawfulness of the conduct. Pepper spray is typically sprayed into the eyes, which are a very vulnerable part of the human anatomy, and the law does not prohibit that in appropriate circumstances. It is not at all clear why the male genitalia would be thought more vulnerable and thus in some way off limits—particularly when, as here, the person against whom the pepper spray is being used is shielding his face.

For these reasons, the Court concludes that Scaife's claim against Faivre is barred by the doctrine of qualified immunity.

## Conclusion

For the reasons stated above, the Court grants defendants' motion for summary judgment [51] and directs the Clerk to enter judgment in favor of defendants Naomi Faivre and Shane Davis and against plaintiff Nerak Scaife.

Date: November 4, 2019        _____
                              MATTHEW F. KENNELLY
                              United States District Judge

7